IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KELVIN NASH,                   *
         Plaintiff,

                             *

     v.                        CIVIL ACTION NO.  WDQ-08-1451
                             *

GARY D. MAYNARD, et al.,
         Defendants.        *
                          ******

## MEMORANDUM

Defendants have moved for dismissal or summary judgment against Plaintiff Kelvin Nash.

Paper No. 11.  Plaintiff has filed a response.  Paper No. 14.  No hearing is necessary to resolve the

issues before the Court.  *See* Local Rule 105.6 (D. Md. 2008).  For the reasons stated below, the

dispositive motion filed by Defendants, treated as a motion for summary judgment, will be granted.

### Standard of Review

Rule 56 (c) of the Federal Rules of Civil Procedure provides that summary judgment shall be

granted if

> the pleadings, depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine issue as to
> any material fact and that the moving party is entitled to a judgment as a
> matter of law.

> Not every factual dispute will defeat the motion.  As the Supreme Court has stated,
> [b]y its very terms, this standard provides that the mere existence of *some*
> alleged factual dispute between the parties will not defeat an otherwise
> properly supported motion for summary judgment; the requirement is that
> there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment may not rest upon

mere allegations or denials of [its] pleadings, but must set forth specific facts showing that there is a

genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).   The court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1993), but it must also abide by its affirmative obligation to ensure that factually unsupported claims and defenses to not proceed to trial.   *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-23 (1986)).   With this standard in mind, the Court now examines Plaintiff's claims.

## Background

Plaintiff alleges that he was exposed to environmental tobacco smoke while housed at the Poplar Hill Pre-Release Unit.   Plaintiff claims that "[t]here is an informal policy/agreement, which smokers are fully are of, that smokers will not be penalized, or penalized lightly, if found with personal use tobacco."   Paper No. 1.   Plaintiff states that "Defendants' dereliction of duty has led to … headaches, dizziness, bouts of sneezing, wheezing, coughing, eye irritation, and at times a rapid pulse rate."   *Id.*   In his opposition to the pending dispositive motion, Plaintiff states that DOC "officials have repeatedly turned a blind eye to smoking by prisoners and DOC officials on, and/or in DOC property such as vehicles."   Paper No. 14.   Plaintiff states that he was exposed to ETS on a daily basis at PHPRU.   Plaintiff claims that Defendants Webster and West attempted to cover up the ETS by using air deodorizer.   Plaintiff also states that he has observed correctional employees smoke on PHPRU property and that he has observed prisoners caught with cigarettes who were not disciplined.   *Id.*, Affidavit.

## Analysis

2

Plaintiff alleges that his exposure to ETS violates his Eighth Amendment right to be free from cruel and unusual punishment.  In order to show that exposure to ETS constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, a prisoner must show that prison officials "have, with deliberate indifference,[1] exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health."[2]  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

> [D]etermining whether [Plaintiff's] conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS.  It also requires a court to assess *whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk*.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Id*. at 36 (emphasis supplied).  The existence of a policy regarding permissible and non-permissible smoking within the institution is evidence that officials have not been deliberately indifferent to the harms posed by ETS.  *See Jordan v. New Jersey Department of Corrections*, 881 F. Supp. 947, 952

---

[1]     The Supreme Court, in *Farmer v. Brennan*, 511 U.S. 825 (1994), described the standard for determining deliberate indifference as follows:   [A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Id*. at 837.  Thus, to succeed on such a claim, the prisoner must show: (1) that he was incarcerated under conditions posing a substantial risk of serious harm; (2) that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (3) that the defendant actually drew this inference; and (4) that the defendant deliberately disregarded the apparent risk.  *Id*.

[2]     Coinciding with this analysis is an examination of Plaintiff's medical condition to determine whether he has an objectively serious medical problem which, if exposed to levels of ETS, poses a risk of serious injury.  *See Helling v. McKinney*, 509 U.S. at 34-35; *see also Atkinson v. Taylor*, 316 F.3d 257, 273-74 (3rd Cir. 2003); *Henderson v. Sheahan,* 196 F.3d 839, 846-47 (7th Cir. 2000).

(D. N.J. 1995) (adoption of no smoking policy indicates defendants were not deliberately indifferent).   Further, good faith enforcement of those policies by prison officials is evidence that the Eighth Amendment has not been encroached.  *See Weaver v. Clarke*, 45 F.3d 1253, 1256 (8th Cir. 1995) (allegations that prison officials consistently unwilling to enforce smoking ban constituted deliberate indifference).   Plaintiff is not guaranteed a smoke-free environment during his term of confinement.  Rather, only exposure to ETS at levels so high that no one would willingly subject themselves to it is prohibited by Eighth Amendment considerations.  *See Helling*, 509 U.S. at 36.       In their Motion to Dismiss or for Summary Judgment, Defendants seek dismissal of Plaintiff's claim.  They argue that while Plaintiff has alluded to instances in which Defendants failed to enforce the DOC non-smoking policy and have themselves violated policy, he has failed to satisfy the objective component of an Eighth Amendment violation by: (i) providing any evidence of unreasonable levels of ETS; or (ii) establishing by any method that *he himself* has been exposed to *unreasonable* levels of ETS.  Defendants further contend that Plaintiff has failed to demonstrate any harm as Plaintiff's medical records reveal only one complaint due to ETS exposure.  Paper No. 11.

Beginning in 1995, the Secretary of the Maryland Department of Public Safety and Correctional Services enacted a ban on smoking inside Maryland prisons after evidence was found indicating the harmful effects of smoking posed to both the smoker and non-smokers exposed to the tobacco smoke.  *See McIntyre v. Robinson*, 126 F. Supp. 2d 384, 397 (D. Md. 2000).  The Maryland Division of Correction ("DOC") has promulgated rules banning smoking and tobacco products in all Division of Corrections facilities.  Paper No. 11, Ex. 1,  Division of Correction Information Bulletin #02-01.  Eastern Correctional Institution Directive 110 26-1 "Search Plans" details the policy and procedure governing institutional search of visitors, staff, inmates, inmates' cells, and other facility

4

areas in order to reduce contraband and detect materials hazardous to the health and safety of those within the Eastern Correctional Institution.   Paper No. 11, Ex. 1.   Additionally, Division of Correction Directives govern inmate behavior.   It is a rule violation for an inmate to possess tobacco or any article or paraphernalia for use of tobacco in any quantity.   *Id*.   Sanctions concerning the possession or use of tobacco by inmates are also established by Division of Correction Directives. *Id*.

Upon review of Plaintiff's allegations, the Court finds that his claim falls  short of an Eighth Amendment violation.   To the extent Plaintiff' claims he found evidence indicative of inmates and staff smoking in areas such as the common rooms, shower areas, compounds, and yard, there was no requirement that Plaintiff remain in those areas.   In such instances, Plaintiff was not exposed to ETS that he could not escape. Brief exposure to ETS in the common areas as is not the type of high risk exposure contemplated by the Supreme Court in *Helling*.   Contemporary standards of decency are not violated where Plaintiff is inadvertently and briefly exposed to ETS while walking by a smoker who is outside.

To the extent Plaintiff claims he was exposed to ETS in his cell/dormitory area, his claim also fails.   The non-smoking plaintiff in *Helling* was forced to share a prison cell with an inmate who smoked five packs of cigarettes a day.   Based upon the materials provided to the Court, however, there is no demonstration that Plaintiff specifically notified Defendants that any cell-mate was violating non-smoking policy or that he even, at a minimum, sought a cell change.[3]   Rather, Plaintiff

---

[3]   Defendants claim that Plaintiff made no effort to pursue administrative remedies regarding his claim. They have provided no affidavits or documentary materials to support this contention.  Plaintiff claims he filed two Administrative Remedy Requests regarding complaints of ETS, neither of which was answered.

states his claims in wholly conclusory terms without any specificity.  Additionally, Plaintiff has not alleged any willful conduct by Defendants with regard to enforcement of the policy.  In fact there is nothing alleged in the Complaint that resembles intentional conduct or deliberate indifference.  That Plaintiff alleges that Defendants failed to enforce each and every non-smoking policy violation he allegedly witnessed states no more than imperfect enforcement of the non-smoking policy which does not comprise a violation under the subjective element of an Eighth Amendment analysis.  *See Scott v. District of Columbia*, 139 F.3d 940, 944 (D.C. Cir. 1998).  In a prison  institutional rules of varying degrees of severity are routinely violated.  Failure by prison officials to prosecute every transgression committed by prisoners, or even staff,  simply does not violate the Eighth Amendment.

In any event, there is no evidence that the exposure to ETS at PHPRU described by Plaintiff approached a level that could be described as dangerous to his health.  *See Larson v. Kempker*, 414 F.3d 936, 940 (8th Cir. 2005) (inmate's failure to put forth objective evidence that he was subjected to unreasonably high levels of ETS).  Plaintiff was housed at PHPRU from August, 2007 to August, 2008.  The DOC medical record, commencing in 2008, shows he has a documented history of  a ruptured right leg tendon.  The medical records and declarations provided to the Court show that in 2008 Plaintiff reported to the healthcare department with complaints regarding his leg injury, a request to review his medical file, and one sick call slip stating: "1. my throat hurts, especially when eating or drinking.  2. I need allergy pills – the smoke combined with the heat and poor air intensified my reaction to smoke." Paper No. 11, Ex. 2.  Plaintiff's subjective complaint contained in this sick call request, dated July 22, 2008, stated that the pain started over a week prior to the submission of the slip and that it happened "rare[ly]."  *Id.*  Plaintiff's singular subjective complaint

that ETS exacerbated his allergies and/or caused an adverse reaction is insufficient to survive Defendants' dispositive motion.

Plaintiff has failed to come forward with evidence demonstrating that Defendants willfully disregarded his complaints concerning violations of the non-smoking policy and ETS.  Accordingly, their Motion to Dismiss or for Summary Judgment is hereby granted.  A separate Order follows.


August 10, 2009                          _____/s/_____
(Date)                                   William D. Quarles, Jr.
                                         United States District Judge